UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------------------- x
AGNES O.,                                                      :
                                                               :
                              Plaintiff,                       :
                                                               :
            v.                                                 :        3:23-CV-01613 (SFR)
                                                               :
KIJAKAZI,[1] Commissioner of Social Security                   :
                                                               :
                              Defendant.                       :
---------------------------------------------------------------- x

**ORDER ADOPTING RECOMMENDED RULING**

Plaintiff Agnes O.[2] initiated this action on December 13, 2023, by filing a complaint

under 42 U.S.C. § 405(g). Compl., ECF No. 1. Plaintiff seeks reversal of a final decision by

the Commissioner of Social Security ("Commissioner"), denying Plaintiff's application for

disability insurance benefits. Mot. to Reverse Decision, ECF No. 16. On July 31, 2024,

Magistrate Judge Maria E. Garcia issued a ruling recommending that the Court affirm the

decision of the Administrative Law Judge ("ALJ") in Plaintiff's case. Recommended Ruling,

ECF No. 23. On August 13, 2024, Plaintiff objected to the Recommended Ruling. Pl. Obj.,

ECF No. 24. On August 15, 2024, the Commissioner responded to the objection. Def.'s Resp.,

ECF No. 26. The underlying facts of this case are fully set forth in the Recommended Ruling.

---

[1] When Plaintiff filed this action, she named the then-Acting Commissioner of the Social Security
Administration, Kilolo Kijakazi, as defendant. Compl., ECF No. 1. Acting Commissioner Kijakazi
no longer serves in that office. Her successor, Commissioner Martin O'Malley, was substituted as
Defendant in the Recommended Ruling. ECF No. 23. However, Commissioner O'Malley no
longer serves in that office. Current Commissioner Frank Bisignano is substituted as defendant
pursuant to Fed. R. Civ. P. 25(d). The Clerk of the Court is respectfully requested to amend the
caption of the case accordingly.

[2] Pursuant to this Court's January 8, 2021 Standing Order, the Plaintiff is identified by her first
name and last initial or as "Plaintiff" throughout this opinion. *See* Standing Order Re: Social
Security Cases, No. CTAO-21-01 (D. Conn. Jan. 8, 2021).

Rule 72(b)(3) of the Federal Rules of Civil Procedure and Local Rule 72.2(b) of the Local Civil Rules of the United States District Court for the District of Connecticut require the Court to review *de novo* any sections of the Recommended Ruling to which any party properly objects. Plaintiff has objected to the Recommend Ruling on the grounds that: (1) it and the ALJ incorrectly reference statements relating to Plaintiff's care for her uncle when she was not caring for her uncle during the relevant period; (2) it overlooks the ALJ's failure to develop the administrative record; (3) it should have found error in the ALJ's disregard for treating physician opinions, reliance on state agency physicians, and failure to obtain a medical expert. *See* Pl. Obj., ECF No. 24.

Each of these objections largely repeats arguments made before Magistrate Judge Garcia. "Where the objecting party simply reiterates her original argument, the court reviews the Magistrate Judge's recommended ruling only for clear error." *Johnston v. Colvin*, No. 3:13-CV-00073 (JCH), 2014 WL 1304715, at *1 (D. Conn. Mar. 31, 2014); *see also Burgos v. Astrue*, No. 3:09-CV-1216 (VLB), 2010 WL 3829108, at *1 (D. Conn. Sept. 22, 2010) ("Moreover, where the objecting party has made only conclusory or general objections, or simply reiterates [her] original argument, the Court reviews the recommendation and ruling of the Magistrate Judge only for clear error.") (internal quotations marks omitted).

The Court has carefully reviewed the Recommended Ruling, Plaintiff's Objection, the ALJs Decision, and the evidence in the administrative record pertinent to the specific objections Plaintiff raised. For the reasons outlined below, the Recommended Ruling, ECF No. 23, is **ADOPTED** in its entirety, and for the well-stated reasons provided in the Recommended Ruling, Plaintiff's Motion to Reverse the Decision of the Commissioner, ECF

No. 16, is **DENIED** and Defendant's Motion to Affirm the Commissioner's Decision, ECF No. 21, is **GRANTED.**

### A.    Plaintiff's Care for her Uncle

Plaintiff asserts that both the ALJ and the Recommended Ruling cite "a doctor report that indicates she was working 40 hours as a CNA with an additional 10 hours of work with a private patient." Pl.'s Obj. 3 (internal quotation marks omitted). According to Plaintiff, "[a]dditional facts and testimony make clear that during the period of time from the onset until the date last insured that the claimant was not taking care of her uncle as he was catastrophically injured as well and was in a facility." *Id.*[3] However, as the Recommended Ruling noted, there is additional evidence in the record—besides the reference to the CNA work—showing that Plaintiff reported taking care of her uncle during the relevant time period. *See, e.g.*, Recommended Ruling ("R&R") 23-24; Administrative Record, ECF No. 10, at 383 (Plaintiff reported to an orthopedic provider on September 14, 2018: "She is a full-time caregiver for her uncle. This . . . caused a slight delay in her treatment, she has been trying to get his situation figured out and get him feeling better before she [chose] to address her own

---

[3] Plaintiff provides no citation to the record for this assertion in her Objection. In addition, although her Motion to Reverse the Decision of the Commissioner states that the ALJ erred in referencing her care for her uncle, the Motion provides no citation to the record that provides information about her uncle's location during the relevant time period. Pl.'s Mot., ECF No. 16-1, at 23. A medical record in the Administrative Record includes a note from August 9, 2018 that the "one of the other passengers [in the car involved in Plaintiff's accident] sustained a skull fracture, orbital fracture and cervical spine fracture and has been hospitalized." Administrative Record, ECF No. 10, at 697. Although it appears from Plaintiff's testimony at the hearing before the ALJ that the passenger was an uncle, *id.* at 79 (Transcript of Oral Hearing), her testimony and other records do not detail the length of his hospitalization.

The page numbers cited for the Administrative Record refer to the number generated by the ECF system.

issues"); *Id.* at 390 (Plaintiff reported to an orthopedic provider on November 19, 2018, approximately seven weeks after the date last insured (DLI), that "she is caring for her uncle full-time at this point and not currently working"). Accordingly, the Recommended Ruling reasonably rejected Plaintiff's argument that the ALJ committed reversable error in referencing Plaintiff's ability to care for her uncle as relevant to an assessment of her functioning. R&R 23-24.

### B.    The ALJ Sufficiently Developed the Administrative Record

Plaintiff briefly argues that the "the recommended ruling overlooks the failure of the ALJ to adequately develop the administrative record." Pl.'s Obj. 4. The development of the administrative record is a "threshold question" that courts examine "[b]efore determining whether the Commissioner's final decision is supported by substantial evidence." *Maribeth N. v. King*, No. 3:24-cv-212 (VAB), 2025 WL 437299, at *9 (D. Conn. Feb. 7, 2025). "Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Id.* at *8 (quoting *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996)). This affirmative obligation means that the ALJ must develop a complete medical history, including reviewing all submitted evidence and making reasonable efforts to obtain further evidence when necessary, by assisting the movant in requesting reports when given permission. *See* 20 C.F.R. § 404.1512(b)(1).

I agree with the Recommended Ruling's conclusion that Plaintiff "has not shown that the ALJ was required to develop the record further by obtaining more opinions regarding her mental and physical functioning." R&R 8-9. As the Recommended Ruling explained, the ALJ "detailed the evidence throughout his opinion supporting the exertional limitations set forth in" the Residual Functional Capacity ("RFC") and an "ALJ may rely on a treating physician's

contemporaneous assessments of a claimant's abilities, in combination with the other evidence of record." *Id.* at 9; *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (stating that where "the record contains sufficient evidence from which an ALJ can assess the claimant's residual functional capacity, a medical source statement or formal medical opinion is not necessarily required") (citation, internal quotation marks, and alteration omitted). In addition, the ALJ inquired at the administrative hearing if there were any outstanding treatment records and left the record open for further submissions. Administrative Record, ECF No. 10 at 112-13 (Transcript of Oral Hearing); *id.* at 370 (Letter); *see also Melton v. Colvin*, No. 13-cv-6188 (MAT), Case 3:23-cv-01613-SFR, 2014 WL 1686827, at *8 (W.D.N.Y. Apr. 29, 2014) (collecting cases) (holding that "the ALJ satisfied her duty to develop the record by holding the record open after the hearing and subsequently granting Plaintiff's request for an additional 7–day extension").

### C.     The ALJ Rejection of Treating Physician Opinions and Reliance on State Agency Physicians

Plaintiff faults the Recommended Ruling for failing to recognize that the ALJ erred in disregarding the opinions of treating physicians and improperly relying on the assessments of state agency physicians with respect to determining Plaintiff's RFC. I disagree.

An RFC refers to "what an individual can still do despite his or her limitations." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (internal quotation marks omitted); *Kimberly N. v. Kijakazi*, No. 3:21-cv-00186 (OAW), 2023 WL 4196933, at *6 (D. Conn. June 27, 2023). In particular, RFC is an "individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis." *Melville*, 198 F.3d at 52. In assessing RFC, the ALJ will "consider a claimant's physical abilities, mental abilities,

symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (citing 20 C.F.R. § 404.1545(a)). The ALJ must consider "all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). The RFC need not "perfectly correspond" with any of the medical opinions in the record as long as the ALJ weighs the available evidence and makes an RFC finding consistent with the record as a whole. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole.").

The Recommended Ruling concludes that that ALJ gave good reasons for finding the assessments of the state agency physicians persuasive and for declining to adopt the opinions in the record that Plaintiff had a more restrictive RFC. I agree. Regarding Plaintiff's physical impairments, the ALJ considered the opinions of treating physicians Dr. Faustin and Dr. Fejos[4] as well as State agency medical physicians Dr. Fette and Dr. Ramirez.

In an opinion dated March 10, 2021, Dr. Faustin opined that the "claimant could only lift 10 pounds, sit and stand/walk for less than 2 hours each total, must be allowed to change positions at will, rarely stoop, and would require unscheduled breaks, 25% time-off-task, and more than 4 absences per month." Administrative Record, ECF No. 10, at 57 (ALJ Decision); *id.* at 603-06 (Dr. Faustin Physical Medical Source Statement). Although Dr. Faustin treated

---

[4] Dr. Fejos is referred to by first name, Arpad, in the ALJ's decision. *See* Administrative Record, ECF No. 10, at 57 (ALJ Decision). As discussed below, Plaintiff was also seen by licensed clinical social worker ("LCSW") Madeline Fejos for mental health treatment.

Plaintiff during the relevant time period, the ALJ observed that Dr. Faustin based his opinion on an examination from December 2020, which was two years after the DLI. *Id.* at 57.[5] In addition, the ALJ found Dr. Faustin's opinion inconsistent with evidence from the relevant period. *Id.*; *see also* R&R 19 (noting that the ALJ stated that the record "'contained no significant abnormalities on imaging, normal strength, sensation, and [normal] gait was repeatedly observed, and the claimant even reported working as a fulltime caregiver for her uncle, despite her impairments'") (quoting Administrative Record, ECF No. 10, at 57 (ALJ Decision)).

Dr. Arpad Fejos opined on May 24, 2021 that the "claimant could rarely lift 10 pounds, sit and stand/walk for less than 2 hours each total, must change positions at will, no stooping, no overhead reaching, only 5% handling and reaching, only 25% fingering, and would require unscheduled breaks every 30 minutes, 25% time-off-task, and 4 absence per month." Administrative Record, ECF No. 10, at 57 (ALJ Decision); *id.* at 851-54 (Dr. A. Fejos Physical Medical Source Statement). However, this assessment was dated nearly three years after the DLI and the ALJ determined the opinion was inconsistent with the evidence in the record from the relevant period. *See id.* at 57 (ALJ Decision).

In contrast to the opinions of Drs. Faustin and Fejos, the ALJ found the state agency physician assessments were supported by the treatment records from the relevant period. *Id.* at 58 (ALJ Decision).[6] Plaintiff disagrees with how the ALJ weighed the evidence but has failed

---

[5] Dr. Faustin's Physical Medical Source Statement, ECF No. 10, at 603-06, was completed on March 10, 2021 but notes that it based on a PT evaluation as of December 8, 2020. *Id.* at 604.

[6] Plaintiff's Objection faults the Recommended Ruling for "spend[ing] quite a bit of time with respect to the psychiatric nature of the claim" and asserts that it "is not the contention of the

to meet her burden to show that no reasonable mind could have agreed with the ALJ's conclusions. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *see also Schillo v. Kijakazi*, 31 F.4th 64, 74 (2d Cir. 2022) ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.").

Therefore, for the reasons provided above, Magistrate Judge Garcia's Recommended Ruling, ECF No. 23, is hereby ACCEPTED over objection. Plaintiff's Motion to Reverse the Decision of the Commissioner, ECF No. 16, is DENIED, and Defendant's Motion to Affirm the Commissioner's Decision, ECF No. 21, is GRANTED.

**SO ORDERED.**

New Haven, Connecticut
September 23, 2025

/s/*Sarah F. Russell*
SARAH F. RUSSELL
United States District Judge

---

plaintiff that she was disabled purely psychiatrically prior to the expiration of the date last insured." Pl.'s Obj. 1-2. The objection does not otherwise appear to take issue with the Recommended Ruling's consideration of Plaintiff's mental impairments. But in any event, the ALJ considered a medical source/mental capacity statements dated October 22, 2020 and February 20, 2021 from LCSW Madeline Fejos, who started treating Plaintiff in June 23, 2020. Administrative Record, ECF No. 10, at 57 (ALJ Decision), 511-16, 855-57 (LCSW M. Fejos Statements). As the mental health treatment began well after the DLI and the evidence prior to the DLI lacked such treatment, the ALJ reasonably explained he was unpersuaded by these opinions.